Karen WADEMAN and Joseph Wademan, Plaintiffs,

v.

Anthony R. CONCRA; City of Hudson Industrial Development Agency; Hudson Development Corporation; Hudson Community Development and Planning Agency; Peterson Petroleum, Inc.; Capitol Valley Contractors, Inc.; Vernon Hoffman Soil and Foundation Engineering; Vernon C. Hoffman, Jr., P.E; Daniel G. Loucks, P.E.; Crawford Associates; David J. Crawford, P.E.; Environmental Oil, Inc.; Frontier Chemical Corp., Defendants.

CRAWFORD & ASSOCIATES and David J. Crawford, P.E., Cross-claimants,

v.

Anthony R. CONCRA; City of Hudson Industrial Development Agency; Hudson Development Corporation; Hudson Community Development and Planning Agency; Peterson Petroleum, Inc.; Capitol Valley Contractors, Inc.; Vernon Hoffman Soil and Foundation Engineering; Vernon C. Hoffman, Jr., P.E; Daniel G. Loucks, P.E.; Environmental Oil, Inc.; and Frontier Chemical Corp., Cross-defendants.

No. 97–CV–363 (LEK/DRH).

United States District Court, N.D. New York.

July 6, 1998.

Iseman, Cunningham, Reister & Hyde, Albany, NY (Brian M. Culnan, Linda J. Clark, of counsel), for Karen Wademan and Joseph Wademan.

Couch, White, Brenner, Howard & Feigenbaum, Albany, NY (James J. Barriere, of counsel), Office of Carl G. Dworkin, Albany, NY (Carl G. Dworkin, of counsel), for Concra.

Ward, Sommer & Moore, Albany, NY (Dean S. Sommer, Michael J. Moore, of counsel), for City of Hudson Industrial Development Corporation, Hudson Development Corporation, and Hudson Community Development and Planning Agency.

Berger & Ducharme, Clifton Park, NY (John B. Ducharme, of counsel), for Vernon Hoffman Soil and Foundation Engineering, Vernon C. Hoffman, Jr., and Daniel G. Loucks.

Donohue, Sabo, Varley & Armstrong, Albany, NY (Alvin O. Sabo, of counsel), for Crawford & Associates and David J. Crawford.

Environmental Products and Services, Inc., Syracuse, NY (Stephen L. Rockmacher, of counsel), Pepper, Hamilton & Scheetz, Philadelphia, PA (Michael A. Freeman, of counsel), for Environmental Oil, Inc.

## MEMORANDUM–DECISION AND ORDER

KAHN, District Judge.

Presently before the Court are several motions by both the plaintiffs and defendants. First, defendant Environmental Oil has moved to dismiss the complaint. Second, defendant Anthony R. Concra ("Concra") has also moved to dismiss the action. Third, defendants Crawford & Associates and David J. Crawford, P.E. ("Crawford") have moved for summary judgment. Fourth, defendants City of Hudson Industrial Development Agency ("CHIDA") and the Hudson Community Development and Planning Agency ("HCDPA") have moved to dismiss the complaint. Fifth, defendant Vernon Hoffman Soil ("Hoffman Soil"), Vernon C. Hoffman ("Hoffman") and Daniel G. Loucks, P.E. ("Loucks") have moved to dismiss the complaint.[1] Sixth, the defendant Hudson Development Corporation ("HDC") has also moved to dismiss. Finally, the seventh motion before the Court is the plaintiffs' cross-motion to amend the complaint. Oral arguments on

---

1. The Court notes that on April 6, 1998, the plaintiffs and these defendants entered into a settlement agreement which makes this motion moot. The Court will therefore only consider the remaining motions in this Memorandum–Decision and Order.

these motions were heard on September 19, 1997 in Albany, New York and the Court reserved decision. As of the date of this Order, defendants Peterson Petroleum, Inc., Capitol Valley Contractors, Inc. ("Capitol Valley"), and Frontier Chemical Corp. ("Frontier") have failed to appear.

## I. *MOTION TO DISMISS*

■ In reviewing the sufficiency of a complaint at the pleading stages, "the issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Where a motion to dismiss is made prior to any discovery or the filing of an answer, the court is averse to dismiss the complaint, regardless of whether the plaintiff is unlikely to prevail, unless the defendant can demonstrate that plaintiff is unable to prove facts which would entitle him to relief. *Wade v. Johnson Controls, Inc.,* 693 F.2d 19, 22 (2d Cir.1982); *see Egelston v. State Univ. College,* 535 F.2d 752, 754 (2d Cir.1976). The Supreme Court has defined the scope of dismissals for failure to state a claim:

> Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). This procedure, operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Hishon, supra,* at 73, 104 S.Ct. 2229, a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one.

*Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

On a motion brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, the allegations in the plaintiff's complaint are deemed to be true and will be liberally construed in the light most favorable to the plaintiff. *Patton v. Dole,* 806 F.2d 24, 30 (2d Cir.1986). In determining the sufficiency of plaintiff's claim for Rule 12(b)(6) purposes, the Court is limited to considering the factual allegations in the complaint, the documents annexed to the complaint as exhibits or relied upon by the plaintiff, and any matters to which judicial notice may be taken. *Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993). A complaint should not be dismissed unless it appears that no construction of the facts would permit the plaintiff to prevail. *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Bass v. Jackson,* 790 F.2d 260, 262 (2d Cir.1986).

## II. *FACTS*

The following facts are presented in the light most favorable to the plaintiffs for purposes of the motions to dismiss. *Patton,* 806 F.2d at 30. Plaintiffs Karen and Joseph Wademan were husband and wife and lived in the Town of Philmont, New York. Starting in July of 1992, Karen Wademan was employed by the Columbia County Department of Social Services ("DSS") as a social welfare examiner. As a result, Mrs. Wademan reported to work at the DSS building located at 25 Railroad Avenue in Hudson, New York between July 1992 and March 1996.

In April of 1998, Mrs. Wademan died from complications from acute myeloid leukemia ("AML"). The presence of AML has been linked to exposure to benzene, which is a derivative of petroleum and a known carcinogen. The plaintiffs contend that Mrs. Wademan was exposed to benzene at the DSS Building in Hudson (the "DSS Building"). Plaintiffs have brought suit against former and current owners of the premises including HDC, CHIDA, Concra, and Peterson Petroleum, Inc. ("Peterson"). The plaintiffs also name parties that were involved in the design, construction, improvement and operation of the DSS Building including the

HCDPA, Capitol Valley, Hoffman, Hoffman Soil, Loucks, Crawford, Environmental Oil and Frontier.

From 1973 to 1985, the property on which the DSS building is located was operated and owned by Peterson. The property housed several above ground storage tanks which were used to store petroleum and other chemicals. In December of 1985, Peterson sold the land to the HDC which had plans for the construction of the DSS Building. In February of 1990, HDC sold the land to Concra who then sold the premises to CHIDA. Concra and CHIDA then entered into an agreement in which Concra, acting as CHIDA's agent, agreed to construct the DSS building. CHIDA then leased the DSS building to Concra. The land had been used for the storage of chemicals, a fact which was known to CHIDA as is evidenced in the agreement between CHIDA and Concra to indemnify CHIDA against claims involving hazardous waste. *See* Culnan Aff., Ex. I, ¶ 2.3(c).

In 1988, Hoffman was retained to evaluate the condition of the property. Hoffman's report indicated that the premises suffered from chemical contamination including petroleum. The report stated that visible petroleum contamination was present as was the odor of fuel on the property. Defendant Loucks purportedly admitted that the contamination was "the worst he had ever seen." Defendants Hoffman and Loucks informed the property owner of the contamination, but no report was made to either state or federal environmental authorities. Hoffman recommended to the property owner that a protective barrier be installed to prevent the migration of petroleum fumes and that a ventilation system be installed to address the problem. The DSS Building was constructed on the contaminated soil and the recommendation of the protective barrier was not followed.

In the Spring of 1996, several DSS employees, including Mrs. Wademan, reported illnesses. Because these people believed that their illnesses were attributable to their work environment, their union, Local 424 of the United Public Service Employees Union, requested an environmental assessment of the premises. Mr. Dale E. Rowe ("Rowe"), the director of Environmental Health of the County's Department of Health ("DOH") performed an environmental assessment of the premises and the DSS Building and determined that the soil and possibly the groundwater were contaminated by petroleum.

In June of 1996, Analytical Laboratories of Albany, Inc. ("Analytical") was retained to draft an assessment plan for the site. It was determined that petroleum contamination was present and that a "significant portion of the contamination is estimated to be located beneath the building foundation and slab." Culnan Aff., Ex. B at 6.0. According to this report, the area of contamination covers approximately 3/4 of an acre and varies in depth from "just below the surface to 24'." Culnan Aff., Ex. B at 6.0. Analytical recommended that a remediation plan be developed that would meet with the approval of New York State's Department of Environmental Conservation ("DEC").

On September 4, 1996, the DOH released a report detailing the air quality of the DSS Building. The DOH noted that the building had ventilation problems and that volatile organic compounds ("VOCs") were detected in the basement area. The report indicated that the presence of VOCs were probably due to the presence of gasoline powered equipment stored in the basement but "subsurface petroleum contamination cannot be ruled out as a contributing source." Culnan Aff., Ex. C at 7.

In the Fall of 1996, Fluor Daniel GTI, Inc. ("Fluor Daniel") was retained by the HCDA to perform additional testing of the site and to provide further recommendations concerning remediation. In the report dated February 5, 1997, Fluor Daniel noted the "presence of significant hydrocarbon impacts to the soil and/or groundwater beneath the building." Culnan Aff., Ex. E at 6. Fluor Daniel also noted that the "amount of petroleum impacts to the soil and/or groundwater, although not quantified, do warrant the need for remedial action to safeguard human health and/or to be protective of the environment." Culnan Aff., Ex. E at 6. The HCDPA has not followed the recommendations in the reports

and the soil remains contaminated while the DSS continues its daily operations at the site.

Plaintiffs have brought a total of twelve causes of action. Three causes of action arise under federal environmental statutes, the first under Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6901 ("RCRA"), the second under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 ("CERCLA"), and the third under the Clean Water Act, 33 U.S.C. § 1251 ("CWA"). The essence of these three claims is that the defendants released hazardous waste in the form of petroleum into the ground and groundwater and should be responsible to rectify the problem through injunctive relief and to compensate Mrs. Wademan for the medical expenses she incurred as a result of her exposure to these chemicals.

The remaining claims are based in state law. The fourth claim is based in negligence for the release of hazardous substances, the subsequent failure to remediate the site, and the resulting injuries suffered by Mrs. Wademan. The fifth cause of action is based in nuisance and damages in strict liability. The sixth claim is against defendants Hoffman and Crawford for breach of duty to exercise reasonable care in the design of the building knowing of the contamination of the site. The seventh and eighth causes of action against defendants Hoffman, Capitol, Crawford, Concra, HDC and CHIDA are based on breach of warranty and breach of warranty for fitness for the particular purpose respectively. The ninth claim against all defendants raises a claim for false and fraudulent misrepresentation. The tenth claim against defendants Peterson and HDC is based on the theory of ultrahazardous activity. The eleventh cause of action against defendants Peterson, HDC, Environmental, and Frontier, plaintiffs' negligence in the act removing the petroleum storage tanks from the facility. Finally, the twelfth claim against all defendants is made on behalf of Mr. Wademan for damages in the form of loss of consortium. Because the first three claims are federal and are the only basis for this Court's jurisdiction, they will be addressed first.

## III. DISCUSSION

As discussed, the plaintiffs' first three claims are based on federal environmental statutes and are the only claims that give rise to this Court's jurisdiction. CERCLA, RCRA, and the CWA each have a "Citizen Suit" provision. The moving defendants contend that these provisions do not give the plaintiffs standing or are otherwise deficient for the plaintiffs' purposes.

### A. Comprehensive Environmental Response, Compensation and Liability Act

The moving defendants raise a litany of arguments against the plaintiffs' CERCLA claim. All of the defendants assert that the plaintiffs lack standing under CERCLA and raise the argument that CERCLA specifically excludes petroleum waste from its umbrella of coverage. The defendants also contend that damages other than clean-up costs, for example private medical monitoring costs, are not available under this statute.

#### 1. Standing Under CERCLA

■ This Court is required to address standing even if the issue had not been raised by the parties. See *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). "As an element of subject matter jurisdiction, the issue of standing should be raised by a motion to dismiss for lack of jurisdiction over the subject matter." 15 Moores Federal Practice, § 101.30[1] (Matthew Bender 3d ed.) "Article III of the Constitution limits the authority of the federal courts to decide only actual cases and controversies." *Lee v. Board of Governors of the Federal Reserve System*, 118 F.3d 905, 910 (2d Cir.1997) (citing *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). "The Supreme Court has recognized that a litigant's stake in the controversy must extend beyond mere interest in a dispute, and the doctrine of standing has developed to ensure the presence of 'that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends.'" *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). "As with questions of

jurisdiction generally, the party invoking the authority of the court bears the burden of proof on the issue of standing." *Id.* (citing *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). In order to establish standing, a movant must show:

> (1) that the plaintiff[s] have suffered an 'injury in fact'—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of— the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* (quoting *Bennett v. Spear,* 520 U.S. 154, ——, 117 S.Ct. 1154, 1163, 137 L.Ed.2d 281 (1997)) (citing in turn *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). In short, "the standing question is whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction and to justify the exercise of the court's remedial powers on his behalf." *Warth,* 422 U.S. at 498–99, 95 S.Ct. 2197 (citing *Baker,* 369 U.S. at 204, 82 S.Ct. 691)(emphasis in original). "The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally." *Id.* at 499, 95 S.Ct. 2197.

■ In the instant case, the Court finds that the plaintiffs have failed to establish standing in the CERCLA claim. The plaintiffs have alleged facts which would lead the Court to conclude that Mrs. Wademan has suffered an injury in fact. For purposes of a motion to dismiss, the Court can presume that there is a causal connection between Mrs. Wademan's injury and the alleged actions of the defendant. However, the plaintiffs have failed to satisfy the third element of standing, a likelihood that the injury will be redressed by a favorable decision by the Court, because even if the Court were to find in favor of the plaintiffs on their CERCLA claim, the statute does not provide them a remedy for the plaintiffs.

In the complaint, the plaintiffs seek both injunctive relief and compensatory damages in the form of "an order directing defendants to cause to remove and remediate the contamination of the premises" and a "judgment in favor of plaintiff Karen Wademan for the costs associated with monitoring her medical condition." Compl. at ¶ 90.

■ The Supreme Court has held that private damages are unavailable under CERCLA. Specifically, the Court noted that "Superfund money [is not] available to compensate private parties for economic harms that result from hazardous substance releases." *Exxon Corp. v. Hunt,* 475 U.S. 355, 106 S.Ct. 1103, 89 L.Ed.2d 364 (1986). "Superfund money may be used to reimburse private parties only for their cleanup activities that are expressly authorized by the Federal Government...." *Id.* The coverage of medical costs was considered but rejected by Congress in passing CERCLA into law.[2]

■ In addition, injunctive relief is also a remedy unavailable to private litigants in CERCLA actions. The Second Circuit noted that CERCLA only allows the Environmental Protection Agency ("EPA") to seek injunctive relief; individual states and private parties are not entitled to seek an injunction. *State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1049 (2d Cir.1985) ("Section 9606

---

2. The Supreme Court noted that:

The most ambitious of the bills, S. 1480, 96th Cong., 1st Sess., was introduced by Senators Culver, Muskie, Stafford, Chafee, Randolph, and Moynihan on July 11, 1979. It was favorably reported, see S.Rep. No. 96–848 (1980).

—

The liability and compensation provisions covered cleanup costs and a variety of private damages, *including medical expenses.* As all three bills reached the Senate, S. 1480 was attacked as too comprehensive and H.R. 85 and H.R. 7020 as too weak. Eventually the Senate passed a substitute bill, see infra, at 1112, as an amendment to H.R. 7020. The new H.R. 7020 was enacted by both Houses, and signed into law on December 11, 1980. *Exxon Corp. v. Hunt,* 475 U.S. at 365 n. 8, 106 S.Ct. 1103 (citing Pub.L. 96–510, 94 Stat. 2767)(emphasis added).

authorizes injunctive relief only where EPA 'determines that there may be an imminent and substantial endangerment to the public health or welfare or the environment.' ") Even if injunctive relief were available, the plaintiffs could not meet the standard needed. A party seeking either preliminary or permanent injunctive relief must demonstrate that he or she would suffer irreparable harm in the absence of injunctive relief. *See Plaza Health Labs., Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir.1989) (party seeking to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme must demonstrate irreparable harm and likelihood of success on the merits) and *New York State Nat'l Org. for Women v. Terry,* 886 F.2d 1339, 1362 (2d Cir.1989) (to obtain permanent injunction, party "must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted"). Due to the unfortunate death of Mrs. Wademan, she will not be returning to the DSS Building and therefore would not benefit from an injunction mandating the cleanup of the site. Thus, the plaintiffs cannot show irreparable harm and could not obtain an injunction even if the remedy were available under CERCLA.

Therefore, because the plaintiffs are not seeking to recover the costs associated with the cleanup of the site, they cannot recover damages under CERCLA. Furthermore, because injunctive relief is not available to individuals, CERCLA is of no assistance to the plaintiffs. Accordingly, the third element of standing, that "the injury will be redressed by a favorable decision," cannot be met. *Lee,* 118 F.3d at 910. Therefore, the claim must be dismissed for a lack of standing.

### 2. *Petroleum Exclusion*

■ Even if the plaintiffs had been able to establish standing under CERCLA, they could not prevail. It is without question that CERCLA was passed with clear language that excludes petroleum from its coverage. In CERCLA's definition of hazardous substance, it states:

(14) The term 'hazardous substance' means (A) any substance designated pur-

suant to section 1321(b)(2)(A) of Title 33, (B) any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title, (C) any hazardous waste having the characteristics identified under or listed pursuant to section 3001 of the Solid Waste Disposal Act [42 U.S.C.A. § 6921] (but not including any waste the regulation of which under the Solid Waste Disposal Act [42 U.S.C.A. § 6901 et seq.] has been suspended by Act of Congress), (D) any toxic pollutant listed under section 1317(a) of Title 33, (E) any hazardous air pollutant listed under section 112 of the Clean Air Act [42 U.S.C.A. § 7412], and (F) any imminently hazardous chemical substance or mixture with respect to which the Administrator has taken action pursuant to section 2606 of Title 15. *The term does not include petroleum, including crude oil or any fraction thereof which is not otherwise specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of this paragraph, and the term does not include natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel (or mixtures of natural gas and such synthetic gas).*

42 U.S.C. § 9601 (emphasis added). The Supreme Court has also noted this exclusion. *See Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 483–85, 116 S.Ct. 1251, 1254, 134 L.Ed.2d 121 (1996) (referring to § 9601(14) as "incorporating certain 'hazardous substance[s],' but not the hazardous and solid wastes defined in RCRA, and specifically not petroleum.") and *Exxon Corp. v. Hunt,* 475 U.S. at 355, 106 S.Ct. 1103 ("CERCLA does not cover oil spills ....") In the complaint, the plaintiffs assert that the source of pollution at the DSS Building is from oil tanks that were once located on the premises. The complaint clearly states that benzene, a derivative of petroleum, is the source of Mrs. Wademan's injuries. Thus, it is evident for this reason as well that the plaintiffs' CERCLA claim must be dismissed.

### B. *The Clean Water Act*

Defendants also raise a litany of arguments against the plaintiffs' claim under the CWA. Specifically, the defendants contend

that the plaintiffs lack standing to bring the claim, that there are no ongoing violations under the CWA, and that groundwater contamination is specifically excluded from claims brought pursuant to the Act.

### 1. Standing Under the CWA

Just as in the CERCLA claim, the Court finds that the plaintiffs have failed to establish standing under the CWA. Again, the plaintiffs have alleged facts which would lead the Court to conclude that Mrs. Wademan has suffered an injury in fact. For purposes of a motion to dismiss, the Court can presume that there is a causal connection between Mrs. Wademan's injury and the alleged actions of the defendant. However, where the plaintiffs fail again is in the third element— that the injury will be redressed by a favorable decision by the Court. *See Lee*, 118 F.3d at 910. Even if the Court were to find in favor of the plaintiffs in their CWA claim, the statute does not provide a remedy for the plaintiffs.

■ The CWA allows for civil actions "for appropriate relief, including a permanent or temporary injunction, for any violation" of the standards set forth in the Act. 33 U.S.C. § 1319(b). An injunction forcing the cleaning of the DSS Building site would have absolutely no effect on the plaintiffs since Mrs. Wademan cannot return to work and will therefore not be exposed to any pollution that may exist. Furthermore, other relief that can be granted by the Court under the CWA, whether it be the imposition of civil penalties or a compliance order mandating the abatement of any ongoing violations that may exist, *see* 33 U.S.C. § 1319(a) and (d), will similarly fail to offer the plaintiffs any assistance.

■ On a more fundamental note, the plaintiffs also fail to meet the definition of a "citizen" under the CWA's Citizen Suit provision. The CWA provides that a " 'citizen' means a person or persons having an interest which is or may be adversely effected." 33 U.S.C. § 1365(g). Since the plaintiffs no longer have an association with the DSS Building, they cannot meet this definition. Accordingly, the plaintiffs cannot establish

standing under their CWA claim and it must be dismissed.

### 2. Ongoing Violation Requirement

In order for an individual to utilize the Citizen Suit provision in the CWA, the complaint must allege a continuing violation under the Act. The Supreme Court has found that "citizens ... may seek civil penalties only in a suit brought to enjoin or otherwise abate an *ongoing violation*." *Gwaltney v. Chesapeake Bay Found.*, 484 U.S. 49, 59, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987)(emphasis added).

■ In the complaint, the plaintiffs allege that the defendants polluted the groundwater beneath the DSS Building. Plaintiffs state that "[u]pon information and belief, prior to and during 1988, defendants caused and permitted significant quantities of petroleum products and other hazardous substances to be released on the premises." Compl. at ¶ 83. Aside from the fact that the plaintiffs do not distinguish which defendants caused this release, the plaintiffs do not contend, nor could they, that the defendants are continuing to pollute the DSS Building site. Therefore, even if the plaintiffs had been able to establish standing, the CWA claim would fail.

### 3. Groundwater Exclusion

■ Even if the plaintiffs were able to establish standing and a continuing violation of the CWA, their claim would still fail under the Act. The CWA provides that the "term 'discharge of a pollutant ... means (A) any addition of any pollutant to navigable waters from any point source ....' " 33 U.S.C. § 1362(12). The Act defines the term "navigable waters" as "waters of the United States including the territorial seas." 33 U.S.C. § 1362(7). While this term is quite broad, the legislative history of the CWA specifically excludes groundwater.

As the Seventh Circuit noted, "[t]he omission of ground waters from the regulations is not an oversight." *Village of Oconomowoc Lake v. Dayton Hudson Corp.*, 24 F.3d 962, 965 (7th Cir.1994) "Members of Congress have proposed adding ground waters to the scope of the Clean Water Act, but these

proposals have been defeated ....” *Id.* “The most concerted effort in Congress occurred in 1972, and the Senate Committee on Public Works explained why it had not accepted these proposals:

> Several bills pending before the Committee provided authority to establish Federally approved standards for groundwaters which permeate rock, soil, and other subsurface formations. Because the jurisdiction regarding groundwaters is so complex and varied from State to State, the Committee did not adopt this recommendation.”

*Id.* (quoting S.Rep. No. 414, 92d Cong., 1st Sess. 73 (1972)). The Fifth Circuit also noted that groundwater was excluded from the purview of the CWA. “Representative Clausen of California ... explained why groundwaters were not included in the Title IV permit provisions:

> Mr. Chairman, in the early deliberations within the committee which resulted in the introduction of H.R.11896, a provision for ground waters, similar to that suggested by the gentleman from Wisconsin, was thoroughly reviewed and it was determined by the committee that there was not sufficient information on ground waters to justify the types of controls that are required for navigable waters.”

*Exxon Corp. v. Train,* 554 F.2d 1310, 1328 (5th Cir.1977)(citing 118 Cong. Rec. 10667 (1972), 1 Leg. Hist. 590–91 (remarks of Rep. Clausen)).

■ In the complaint, the plaintiffs assert that “the release of hazardous substances into the groundwater on and around the premises poses an immediate danger to the cleanliness of the water on and around the premises.” Compl. at ¶ 93. Thus, because the plaintiffs allege that the defendants have polluted the groundwater beneath the DSS Building, it is clear that the CWA is of no avail. Therefore, the CWA claim must be dismissed.

### C. *Resource Conservation and Recovery Act*

The defendants’ motions before the Court contain similar arguments regarding the applicability of RCRA to this action including the assertion that the plaintiffs do not have standing under the statute.

### 1. *Standing Under RCRA*

The Citizen Suit provision in RCRA provides in relevant part:

> a) In general ... any person may commence a civil action on his own behalf—
>
>> (1)(B) against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment ....

42 U.S.C. § 6972(a)(1)(B) (1995). For the following reasons, the Court finds that the plaintiffs cannot establish standing to bring an action under RCRA.

The Supreme Court has noted that RCRA’s Citizen Suit provision “permits a private party to bring suit against certain responsible persons, including former owners, ‘who ha[ve] contributed or who [are] contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which *may present* an *imminent* and substantial endangerment to health or the environment.’” *Meghrig,* 516 U.S. at 485–87, 116 S.Ct. at 1255 (emphasis in original). “The meaning of this timing restriction is plain: An endangerment can only be ‘imminent’ if it ‘threaten[s] to occur immediately,’ and the reference to waste which ‘may present’ imminent harm quite clearly excludes waste that no longer presents such a danger.” *Id.* (citing Webster’s New International Dictionary of English Language 1245 (2d ed.1934)).

■ The plaintiffs in this action are complaining of a wholly past injury and violation. As discussed in the prior section, the alleged release of petroleum on the site occurred approximately ten years ago when the storage tanks were removed from the prem-

ises. The plaintiffs are not faced with an imminent harm because they are no longer associated with the DSS Building. They therefore lack standing because any remedial action ordered by the Court would not effect or assist the plaintiffs. *See Lee,* 118 F.3d at 910. And, as discussed in both the CERCLA and CWA claims, RCRA does not create a right for a private citizen to collect damages such as medical monitoring costs. In fact, the Supreme Court has held that RCRA, unlike CERCLA, does not even create the right to collect damages for past clean up costs incurred by private citizens. *Meghrig,* 516 U.S. at 487–88, 116 S.Ct. at 1256 ("Section 6972(a) does not contemplate the award of past cleanup costs . . . .") Therefore, the plaintiffs' RCRA claim must be dismissed for lack of standing.

In conclusion, the three federal causes of action in this case cannot be heard by this Court due to a lack of standing and resulting lack of Article III Constitutional power to exercise jurisdiction over the matter. As a result, the federal claims under the CWA, CERCLA, and RCRA must be dismissed against all moving and non-moving defendants.

### D. *Pendent State Law Claims*

Based upon above, this Court lacks subject matter jurisdiction to hear the federal claims in this action. "It is well settled that 'if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.'" *West Hartford v. Operation Rescue,* 915 F.2d 92, 104 (2d Cir.1990) (citations omitted)(citing *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). This decision is in keeping with the principle that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Robison v. Via,* 821 F.2d 913, 925 (2d Cir.1987). Having determined that plaintiff's federal claims must be dismissed, and there being no diversity of citizenship between the parties, the Court declines to exercise jurisdiction over the state law claims.[3]

### E. *Motion to Amend the Complaint*

The Federal Rules provide: "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . ." Fed.R.Civ.P. 15(a). While the majority of the defendants in this case have not served a responsive pleading but moved to dismiss, the Crawford defendants have answered and moved for summary judgment. The Federal Rules further provide that if a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse part[ies]; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).

"Although Fed.R.Civ.P. 15(a) provides that leave to amend a complaint 'shall be freely given when justice so requires,' it is within the sound discretion of the district court whether to grant or deny leave to amend." *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995). Such leave will be denied when "the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir. 1990). "Undue delay and futility of the amendment, among other factors, are reasons to deny leave." *Zahra,* 48 F.3d at 685 (citing *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.,* 22 F.3d 458, 462 (2d Cir.1994)). The party seeking leave has the burden of providing satisfactory reasons justifying amendment. *Cresswell,* 922 F.2d at 72. Furthermore, although leave to amend is to be freely given, denial of a motion to amend is appropriate when the sole reason for the undue delay is ignorance of the law. *Goss v. Revlon, Inc.,* 548 F.2d 405, 407 (2d Cir.1976) (citations omitted).

██ The Court declines to permit the plaintiffs to amend the complaint for the following reasons. First, the motion to amend the complaint was filed six months after the complaint. Plaintiffs' counsel provide no explanation whatsoever as to why permission to amend the complaint should be

---

**3.** Plaintiffs are, of course, free to file an action in   State court.

granted nor is an explanation provided as to why it took six months to move for permission to amend. Finally, the Court is certain that an amendment in this case would be futile since no facts have been nor could likely be alleged that would overcome the lack of justiciability of this action.

Accordingly, it is

ORDERED that the motion to dismiss by defendant Environmental Oil (Docket # 27) is GRANTED and the case is DISMISSED against this defendant; and it is further

ORDERED that the motion to dismiss by defendant Concra (Docket # 32) is GRANTED and the case is dismissed against this defendant; and it is further

ORDERED that the motion for summary judgment by defendants Crawford and Crawford Associates (Docket # 33) is GRANTED and the case is dismissed against these defendants; and it is further

ORDERED that the motion to dismiss by defendants City of Hudson Industrial Development Agency (CHIDA) and the Hudson Community Development and Planning Agency (HCDPA) (Docket # 39) is GRANTED and the case is dismissed against these defendants; and it is further

ORDERED that the motion to dismiss by defendants Hoffman Soil, Hoffman, and Loucks (Docket # 42) is GRANTED and the case is dismissed against these defendants; and it is further

ORDERED that the motion to dismiss by defendant Hudson Development Corporation (HDC) (Docket # 47) is GRANTED and the case is dismissed against this defendant; and it is further

ORDERED that the prior Order of this Court (Docket # 81) for default against the remaining defendants Capitol Valley and Frontier is VACATED and the claims against these defendants are DISMISSED due to the lack of jurisdiction of this Court; and it is further

ORDERED that defendant Crawford's motion (Docket # 77) for relief from Magistrate Judge Homer's Order sealing the terms of the settlement agreement between the plaintiff and defendants Hoffman and Loucks is DENIED as moot; and it is further

ORDERED that the motion to amend the complaint is DENIED and the case DISMISSED in its entirety; and it is further

ORDERED the Clerk shall serve a copy of this Order on all parties by regular mail.

IT IS SO ORDERED.