KNOLL, J.,
concurring in part and dissenting in part.
hi respectfully dissent from the portion of the per curiam holding defendant Turner Industries is not responsible for the $422,043.59 which was written off by the medical care providers. This result does not faithfully apply the relevant statute and leads to a manifestly inequitable outcome. Indeed, the majority rewards Turner for acting in bad faith by refusing to pay the medical bills rightly owed to plaintiff Jerry Wayne Benoit after he suffered catastrophic and terminal cancer. This is not the result required by the statute or intended by the Legislature.[1]
Jerry Benoit worked for Turner Industries for twenty-seven years. For ten of those years he worked as a general laborer for a Lake Charles Citgo refinery, where Turner was contracted to perform general maintenance. Benoit’s duties included cleaning chemical discharges and oily waste which collected in the drainage ditches, sewers, and processing units at the refinery. In the course of this work, he was exposed to any number of potentially dangerous or carcinogenic chemicals, including high levels of benzene. As may be imagined, it was unpleasant work, and co-workers and Benoit family members testified as to the “awful” conditions he worked in and his haggard appearance when he returned [2home from work. According to Benoit’s wife and daughter, he often came home “covered in oily muck” and complained of headaches, dizziness, and vomiting, all of which are consistent with acute benzene exposure.
In July 2006, Benoit fell ill. He was soon diagnosed with acute myeloid leukemia (“AML”), a cancer known to be linked to high levels of benzene exposure.[2] Despite the medical evidence linking Be-noit’s cancer to the chemicals he was ex *641 posed to at work, his claim for medical benefits was denied. Because his AML required immediate and expensive care beyond their ability to afford, the Benoit family was forced to rely on the state’s charity hospital system for treatment. The eventual medical bills totaled over $625,000. Medicaid paid for $203,124.68. The remaining $422,043.59 was “written off’ by the medical care providers. Turner paid nothing.
The instant suit was filed in October 2006. Benoit passed away in November 2007, and his wife was substituted as claimant in his place. The case went to trial before a worker’s compensation hearing officer, who credited the testimony of Benoit’s expert witnesses over the testimony of Turner’s expert, and found Turner fully liable for Benoit’s medical bills. Be-noit’s widow was awarded back indemnity from August 2006 through November 2007; death benefits for back indemnity beginning in November 2007; total medical bills in the amount of $625,168.27; attorney fees in the amount of $22,000; statutory penalties in the amount of $8,000; and court costs and expert fees.
This case is about Turner’s failure to satisfy its statutory obligations under the Worker’s Compensation Act. Under the Act, when an employee “receives | ^personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation.” La. Rev.Stat. § 23:1031. This compensation includes, but is not necessarily limited to, “all necessary drugs, supplies, hospital care and services, medical and surgical treatment,” La.Rev.Stat. § 23:1203, and payment of medical benefits must be made “within sixty days after the employer or insurer receives written notice thereof.” La.Rev.Stat. § 23:1201(E).
In return, the employer is granted immunity from tort claims. This is the quid pro quo at the center of the Worker’s Compensation Act, “a compromise in which the employer surrenders immunity from liability, which he would otherwise be entitled to in cases wherein he was without fault, and, in return, the employee fore-goes his right to full damages for his injury in exchange for limited but certain compensation.” Austin v. Abney Mills, Inc., 01-1598 (La.9/4/02), 824 So.2d 1137, 1144-45. This compromise is the “quintessential characteristic of the workers’ compensation movement.” O’Regan v. Preferred Enterprises, Inc., 98-1602 (La.3/17/00), 758 So.2d 124, 134.
Turner thus has a statutory duty to promptly provide all necessary medical treatment related to Benoit’s AML diagnosis. This duty is enshrined in public policy and is non-waivable: “No contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided.” La. Rev.Stat. § 23:1033. The primary legal question before this Court is whether Medicaid’s actions in providing Benoit with medical care thus relieved Turner from its duty to provide such care. La.Rev.Stat. § 23:1212 provides:
A. Except as provided in Subsection B, payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, or by Medicaid or other state medical assistance programs of medical expenses that are owed under this Chapter, shall extinguish the claim against the employer or insurer for those medical expenses. This Section shall not be |4regarded as a violation of R.S. 23:1163. If the employee or the employee’s spouse actually pays premiums for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will only *642 apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums.
B. Payments by Medicaid or other state medical assistance programs shall not extinguish these claims and any payments made by such entities shall be subject to recovery by the state against the employer or insurer.
(emphasis added).
The statute clearly provides any “payments” for medical care made by Medicaid extinguish any duty on the part of Turner to provide such care. The per curiam is therefore correct insofar as it finds the Benoits are not entitled to recover the $203,124.68 which Medicaid actually paid for Benoit’s health care; this is settled law. However, the majority errs in also applying this statute to the $422,043.59 subject to Medicare “write-offs.”
It is a fundamental precept of Louisiana’s civilian legal system that any discussion of an issue must begin with a careful reading of the language of the statute. In re Succession of Faget, 10-0188 (La.11/30/10), 53 So.3d 414, 420. Where the statute is clear, unambiguous, and its application does not lead to absurd consequences, no further analysis is necessary and we must apply the statute as written. La. Civ.Code art. 9. At the same time, we are compelled to strictly construe any statute relieving an employer of its obligation to pay medical benefits, as La.Rev.Stat. § 23:1033 sets forth a strong public policy against allowing employers to avoid their statutory liability. Moreover, well-settled canons of construction require worker’s compensation statutes to be construed liberally in favor of the employee, not the employer. Dufrene v. Video Co-Op, 02-1147 (La.4/9/03), 843 So.2d 1066, 1074-75; Lester v. Southern Casualty Ins. Co., 466 So.2d 25, 28 (La.1986).
|sHere, La.Rev.Stat. § 23:1212(A) provides a “payment by any person or entity” to the medical care provider shall extinguish the employer’s obligation to provide medical benefits. Because “payment” is not defined in the Act, we must give it is generally prevailing meaning. La. Civ. Code art. 11. The generally understood meaning of “payment” is to “give money to in return for goods or services rendered.” American Heritage Dictionary of the English Language (4th ed.2000).[3] Write-offs are, by their very definition, not payments, as no money changes hands. Because only a payment extinguishes the employer’s obligation, under the clear language of the statute, Turner’s obligations are not extinguished by the Medicaid write-off, and it is still liable for the full amount of Benoit’s medical bills irrespective of any write-off.
The per curiam does not perform a statutory analysis of La.Rev.Stat. § 23:1212. Instead it, relies on the cases of Bozeman v. State, 03-1016 (La.7/2/04), 879 So.2d 692 and Agilus Health v. Accor Lodging North America, 10-800 (La.11/30/10), 52 So.3d 68. These decisions are inapposite for several reasons.
*643 In Bozeman v. State, 03-1016 (La.7/2/04), 879 So.2d 692, this Court considered the applicability of the collateral source rule to Medicaid write-offs. The collateral source rule is a common law doctrine, adopted by this Court, under which an “injured plaintiffs tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor’s procuration or contribution.” Id. at 698 (citing Louisiana DOTD v. Kansas City Southern Railway, 02-2349 (La.5/20/03), 846 So.2d 734, 739). After carefully considering the history and development of the common law collateral source doctrine, we | (¡found it was based on the “benefit of the bargain” theory; that is, where a plaintiff has made a bargain with an outside source (such as an insurance company) to provide for medical care, and has thus diminished his own patrimony, the benefits of this bargain should accrue to the plaintiff, not to the tortfea-sor. Id. at 704-5. We found, because applying for Medicaid did not diminish the plaintiffs patrimony, the “benefit of the bargain” theory did not apply in Bozeman and a plaintiff was not entitled to recover for Medicaid write-offs within the context of a tort suit only. Id. I wrote separately to “emphasize the narrowness of our holding,” and to note the collateral source rule did not apply in part because write-offs “are technically not payments from a collateral source.” Id. at 706 (Knoll, J., additionally concurring)(emphasis added).
Bozeman was correctly decided, but its holding is unique to tort law and does not extend to actions under the Worker’s Compensation Act. As noted, Bozeman is a decision based on common law or jurisprudential authority, as there is no statute setting forth a collateral source rule within tort law. Worker’s compensation law, unlike tort law, is governed by a comprehensive statutory scheme, and it is the duty of this Court to apply those statutes faithfully, not to set them aside in order to apply a judge-made common law doctrine as we did in Bozeman. When drafting the Worker’s Compensation Act, the Legislature clearly considered the application of the collateral source rule, and codified a limited version of the rule as La.Rev.Stat. § 23:1212. It is La.Rev.Stat. § 23:1212, and not Bozeman, which controls this case.
Moreover, the policy considerations underlying worker’s compensation law are entirely different from those underlying tort law. The tortfeasor in Bozeman had no duty to pay for the plaintiffs medical bills in the absence of a court judgment against him. This is not so under the Worker’s Compensation Act. As Benoit’s employer, Turner had an immediate and non-waivable duty to provide 17Benoit with any and all medical care necessary to treat his illness. Indeed, no employee injured on the job should ever have to turn to Medicaid for his medical treatment, as it is solely the employer’s duty to pay.
The per curiam also relies on Agilus Health v. Accor Lodging North America, 10-800 (La.11/30/10), 52 So.3d 68, a lawsuit brought by a health services provider against an insurance company. In Agilus, it was undisputed that the defendant met its duty to furnish adequate medical treatment to its employees. The only question was whether the defendant was statutorily required to pay the hospital the full amount set forth in the worker’s compensation fee reimbursement schedule, as opposed to the lesser figure set forth in the parties’ contract. Id. at 75-76. This was effectively a contractual dispute between an insurer and the hospital, and the issues presented were not similar to those in the case at bar. Certainly, our decision in Agilus does not control this case and cannot overrule the express language of La. Rev.Stat. § 23:1212.
*644 As a result of the per curiam judgment, the Benoits’ sole remaining remedy against Turner is an award of penalties under La.Rev.Stat. § 23:1201(F). However, these penalties are limited by statute to only $8,000. Compared to the over $625,000 Turner saved by denying Benoit’s claim for benefits and foisting the bill upon the taxpayers,[4] this sum is a pittance and wholly inadequate to deter this kind of behavior from employers in the future.
As a result, this majority opinion creates a strong incentive for Turner, and employers like it, to deny all worker’s compensation claims for catastrophic and terminal illnesses when potential liability is measured in the hundreds of thousands of dollars. While an $8,000 penalty may be sufficient to deter employers from denying coverage for everyday injuries such as broken bones and strained backs, it Ms entirely insufficient where over $625,000 is at issue in medical bills alone.
The per curiam suggests the Benoits will receive an “improper windfall” if Turner were required to pay for the full amount of his medical care. This is backwards. The Benoits received no windfall; as a direct result of the chemicals he was exposed to while working at Turner, Jerry Benoit suffered from catastrophic and terminal cancer which took his life within a year of the diagnosis. The only party who is receiving a windfall is Turner. By arbitrarily denying Benoit’s claim for benefits and shirking its duties under the Worker’s Compensation Act, Turner profited in an amount over $625,000. This holding rewards Turner for its an undisputed violation of its statutory duties under the Act and creates a perverse incentive for other companies to do the same.[5]
This result is in direct contradiction to the guiding principles of the Worker’s Compensation Act and the clear statutory language of La.Rev.Stat. § 28:1033 and § 23:1212. As I stated in a similar context in Granger v. Nelson Logging, 96-223 (La.App. 3 Cir. 12/4/96), 685 So.2d 400, 403, “The statute’s operation in the case sub judice undermines the basic principle of worker’s compensation law, namely, that persons who enjoy the benefit of an employee’s labor should be the ones to bear the cost of injuries incident to that labor.” In response to the Granger opinion, the Legislature amended La.Rev.Stat. § 23:1212 to avoid the inequitable result reached in that case. Given the results of today’s opinion, the Legislature should again address this inequitable result that fosters perverse incentives by unscrupulous employers.

. I concur with the portion of the per curiam reversing the award of $203,124.68 paid by Medicaid, and with the portion recalling the writ as to Turner's remaining assignments of error.

. Plaintiffs' experts stated the exposure to benzene was the direct cause of Benoit’s cancer, and this testimony was credited by the hearing officer. The link between benzene and AML is also recognized in the jurisprudence. ‘‘[B]enzene is a known carcinogen and an established cause of AML.” Sutera v. Perrier Group of America, Inc., 986 F.Supp. 655, 659 (D.Mass.1997). Accord, Wademan v. Concra, 13 F.Supp.2d 295, 298 (N.D.N.Y.1998), Parker v. Mobil Oil Corp., 7 N.Y.3d 434, 449-450, 824 N.Y.S.2d 584, 857 N.E.2d 1114 (2006)(the link between benzene and AML is "not in dispute”).

. See McPike Drug Co. v. Williams, 104 Okla. 244, 245, 230 P. 904 (1924)("The term ‘payment’ in its legal import, means the satisfaction of a debt, by money or the representative of money, and not by novation, compromise, or accord and satisfaction.”); Cranston v. West Coast Life Ins. Co., 63 Or. 427, 437, 128 P. 427 (1912)(“ ‘Payment’ is the discharge of an obligation by the delivery and acceptance of money or of something equivalent to money which is regarded as such at the time by the party to whom the payment is due.”); Indiana Dep’t of State Revenue v. Colpaert Realty Corp., 231 Ind. 463, 471, 109 N.E.2d 415 (1952)(Payment is the "discharge of an obligation by the delivery and acceptance of money, or of something equivalent to money, which is regarded as such at the time by the person to whom payment is due.”)

. Under La.Rev.Stat. § 23:1212, Medicaid is entitled to file a claim against Turner to recover this money. For reasons not disclosed in the record, it has not done so.

. Indeed, the per curiam recognizes it has encouraged an "unscrupulous employer” to "intentionally deny benefits in an effort to force the employee to obtain free medical treatment through Medicaid, thereby giving the employer the benefit of any Medicaid write-offs.” (Opinion at 635, fn. 3).