# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-3170

NANCY C. GAZAILLE, APPELLANT,

V.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 15, 2014[1]                                    Decided December 4, 2014)

*J. Scott Kilpatrick,* with whom *Landon E. Overby* and *Robert V. Chisholm*, all of Providence, Rhode Island, were on the pleading, for the appellant.

*Bryan W. Thompson*, Senior Appellate Attorney, with whom *Will A. Gunn*, General Counsel; *Mary Ann Flynn*, Assistant General Counsel; and *Nisha C. Hall*, Deputy Assistant General Counsel, all of Washington, D.C., were on the pleading, for the appellee.

Before KASOLD, *Chief Judge*, and HAGEL and GREENBERG, *Judges*.

HAGEL, *Judge*, filed the opinion of the Court. GREENBERG, *Judge*, filed a concurring opinion. KASOLD, *Chief Judge*, filed a dissenting opinion.

HAGEL, *Judge*: Nancy C. Gazaille appeals through counsel an October 10, 2012, Board of Veterans' Appeals (Board) decision that denied entitlement to dependency and indemnity compensation benefits. Mrs. Gazaille's Notice of Appeal was timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. § 7252(a). This matter was referred to a panel of the Court to determine whether 38 U.S.C. § 1304, when read together with 38 U.S.C. § 1151, provides any exception to the requirement that, to establish status as a surviving spouse, the claimant must have been married to the veteran for the one year prior to the veteran's death. Because we find

---

[1] Oral argument was held at The Columbus School of Law, The Catholic University of America, in Washington, D.C. The Court thanks the law school for its hospitality. The Court also thanks counsel for both parties for presenting an outstanding oral argument.

that the plain language of section 1304 is clear and no equitable remedy is available, the October 2012 Board decision will be affirmed.

## I. FACTS

Mrs. Gazaille's late husband, veteran Dennis L. Gazaille, served on active duty in the U.S. Marine Corps from April 1966 to June 1969. The record reveals that Mr. and Mrs. Gazaille were married in Stratford, Connecticut, on February 4, 2008. Mr. Gazaille died on December 8, 2008, 58 days prior to his first wedding anniversary. His death certificate lists the cause of death as respiratory distress due to lung cancer. At the time of his death, Mr. Gazaille was in receipt of VA disability benefits for, among numerous other conditions, lung cancer with metastatic cancer to the liver, rated 100% disabling.

In December 2008, Mrs. Gazaille filed an application for dependency and indemnity compensation benefits and benefits for the cause of her husband's death. In January 2009, a VA regional office granted benefits for the cause of Mr. Gazaille's death. Later that month, Mrs. Gazaille's non-attorney representative submitted evidence in support of her claim for dependency and indemnity compensation benefits. Shortly thereafter, the regional office denied Mrs. Gazaille's claim for dependency and indemnity compensation benefits, finding that she had not been married to Mr. Gazaille for at least one year prior to his death, as required by law. Mrs. Gazaille filed a Notice of Disagreement with that decision and ultimately appealed to the Board.

In a February 2009 statement, Ms. Gazaille wrote: "I . . . believe if the VA had diagnosed [my husband's] cancer back when the stomach pains began in the beginning of 2008, and before he had to go to another hospital for them to find it, we would have made our first anniversary, which was last week." Record (R.) at 132. In a July 2009 statement, Mrs. Gazaille informed VA that she met Mr. Gazaille in January 2006, they moved in together in April 2006, and they got engaged in the summer of 2007. She detailed the care she provided Mr. Gazaille during his medical treatment and reiterated her belief that VA's failure to diagnose her husband with cancer in January 2008 led to his "premature" death, depriving them of at least eight weeks of marriage (which would have allowed her to meet the one-year requirement to be considered a surviving spouse for dependency and indemnity compensation benefits purposes). R. at 75.

2

Also in July 2009, through her non-attorney representative, Ms. Gazaille asserted that "she was informally [Mr. Gazaille's] spouse from January 2006" and that the date of their marriage "was merely a formality to what was already a publicly accepted union." R. at 84-85. She again asserted that Mr. Gazaille's death "was hastened by VA's error in properly diagnosing [his] condition in the first place. If not for this error in diagnosing [his] condition, he would have lived." R. at 85.

In October 2012, the Board issued the decision on appeal. The Board determined that Mrs. Gazaille did not meet the criteria for recognition as Mr. Gazaille's surviving spouse for dependency and indemnity compensation benefits purposes. In particular, the Board found that Mr. and Mrs. Gazaille had not been legally married for one year prior to his death in December 2008, a common law marriage did not exist between them in either New York or Connecticut, and an equitable finding in Mrs. Gazaille's favor was precluded by law. This appeal followed.

## II. ANALYSIS

Under certain circumstances, dependency and indemnity compensation benefits may be paid to the surviving spouse of a veteran who died from a service-connected condition. 38 U.S.C. § 1310. A "surviving spouse" is a person[2] (1) whose marriage to a veteran meets the requirements of 38 C.F.R. § 3.1(j); (2) who was married to the veteran at the time of the veteran's death; (3) who lived with the veteran continuously from the date of marriage to the date of death (barring circumstances not applicable here); and (4) has not remarried since the veteran's death. *See* 38 U.S.C. § 101(3); 38 C.F.R. § 3.50(b) (2014). Under § 3.1(j), "[m]arriage means a marriage valid under the law of the place where the parties resided at the time of marriage, or the law of the place where the parties resided when the right to benefits accrued." 38 C.F.R. § 3.1(j) (2014). For marriages that occurred after the veteran's discharge from service, entitlement to dependency and indemnity compensation benefits also requires, as relevant here, that the surviving spouse be married

---

[2] The statute and regulation currently state that a surviving spouse must be "a person of the opposite sex." 38 U.S.C. § 101(3); 38 C.F.R. § 3.50(b) (2014). VA, however, "is no longer denying marital benefit claims because a 'spouse' or a 'surviving spouse' is not a person of the opposite sex," in accordance with the President's directive to the Executive Branch "to cease enforcement of" those provisions in light of *United States v. Windsor*, 133 S.Ct. 2675 (2013). *See DOMA and Your Benefits*, available at https://www.ebenefits.va.gov/ebenefits-portal/ebenefits.portal (click "Learn More").

to the veteran for at least one year prior to the veteran's death. 38 U.S.C. § 1304(2); *see also* 38 C.F.R. § 3.54(c)(2) (2014).

On appeal, Mrs. Gazaille does not dispute the Board's findings that she and her husband were not married for a full year prior to his death and that a common law marriage did not exist under the laws of either New York or Connecticut. Instead, she argues only that VA's failure to diagnose her husband's lung cancer in a timely manner delayed treatment and thus hastened his death, effectively preventing her from establishing her status as surviving spouse of at least one year to qualify for dependency and indemnity compensation benefits. Essentially, she asks the Court to establish an exception–either based on a combined reading of section 1304 and section 1151 or based in equity–to the one-year marriage requirement of section 1304 where VA's negligence shortens a veteran's life to a point in time prior to his one-year wedding anniversary.[3]

The Court notes that the Board did not expressly address Mrs. Gazaille's particular theory of entitlement. Remand is not required on that basis, however, because it is clear that the Board denied Mrs. Gazaille's claim solely because she did not demonstrate that she was married to Mr. Gazaille for at least one year (and, alternatively, because Connecticut does not recognize common law marriage), a requirement that comes directly from section 1304. Accordingly, the Court is able to review the Board's decision to deny Mrs. Gazaille dependency and indemnity compensation benefits.

A. Statutory Considerations

The question presented is purely one of statutory interpretation, and so we begin–and here, we end–with consideration of the plain language of section 1304: "No dependency and indemnity compensation shall be paid to the surviving spouse of a veteran dying after December 31, 1956, unless such surviving spouse was married to such veteran– . . . (2) for one year or more." 38 U.S.C. § 1304(2).

"When . . . the terms of a statute [are] unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances." *United States v. James*, 478 U.S. 597, 606 (1986) (internal quotation omitted). Moreover, absent a "clearly expressed legislative intention to the contrary," a

---

[3] The Court notes that, at this time, there is no evidence in the record that (1) VA delayed in diagnosing Mr. Gazaille, (2) any delay was negligent, or (3) any delay hastened Mr. Gazaille's death by at least eight weeks. The Court assumes, for purposes of this decision, that such evidence could be produced, perhaps with VA's statutorily required assistance, if we were to remand. *See* 38 U.S.C. § 5103A.

statute's plain meaning "must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). Here, section 1304 is plainly unambiguous: no dependency and indemnity compensation benefits "will" be paid "unless" the claimant was married to the deceased veteran "for one year or more." 38 U.S.C. § 1304(2). In fact, we are hard pressed to imagine a way in which the statute could be plainer, and the statute creates no exceptions for circumstances such as Mrs. Gazaille's nor any other so-called "good faith" exceptions. Moreover, Mrs. Gazaille cites, and the Court can find, nothing in the legislative history that would lead us to the conclusion that Congress intended something other than what it expressly set out in section 1304.

Mrs. Gazaille urges the Court to read section 1304 in conjunction with section 1151, which provides for dependency and indemnity compensation benefits where VA's negligence caused the veteran's death, to find that Congress intended an exception to section 1304 in cases of negligence. It is true that "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989). Even so, the Court finds no basis for Mrs. Gazaille's theory. Congress provided for dependency and indemnity compensation benefits where VA's own negligence caused the veteran's death, but Congress also expressly limited the class of claimants who are eligible for dependency and indemnity compensation benefits under any circumstances to those who were married to the veteran for a full year prior to his death, without stating, in either statute, that exceptions could be made.

The length of marriage requirement has evolved since it was first introduced, but it has never included an exception. In 1958, Congress adopted 38 U.S.C. § 404, the precursor to section 1304:

> § 404. Special provisions relating to widows
>
> No dependency and indemnity compensation shall be paid to the widow of a veteran dying after December 31, 1956, unless she was married to him–
>
> (1) before the expiration of fifteen years after the termination of the period of service in which the injury or disease causing the death of the veteran was incurred or aggravated; or
>
> (2) for five or more years; or
>
> (3) for any period of time if a child was born of the marriage.

Pub. L. 85-857, Sept. 2, 1958, § 404. Section 1151, then 38 U.S.C. § 351, was adopted at the same time:

> Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation under chapter 31 of this title, awarded him under any of the laws administered by the Veterans' Administration, or as a result of having submitted to an examination under any such law, but not the result of his own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation under this chapter and dependency and indemnity compensation under chapter 13 of this title shall be awarded in the same manner as if such disability, aggravation, or death were service-connected; except that no benefits shall be awarded unless application be made therefor within two years after such injury or aggravation was suffered, or such death occurred.

Pub. L. 85-857, Sept. 2, 1958, § 351. As is clear from the plain language, neither statute contained any exceptions to the length-of-marriage requirement for dependency and indemnity compensation benefits.[4]

In 1967, Congress amended subsection (2) of section 404 to "enlarg[e] widows' eligibility for benefits" and implemented the one-year requirement, but again made no exceptions to the length-of-marriage requirement. Pub. L. 90-77, Aug. 31, 1967. With the exception of redesignation at 38 U.S.C. § 1304 in 1991, Pub. L. 102-83, Aug. 6, 1991, this statute remains substantively unchanged today.

Section 351, also redesignated in 1991 as section 1151 (Pub. L. 102-83, Aug. 6, 1991), remained unchanged, save nonsubstantive wording changes, until 1996, when it was amended to add a fault requirement–that is, to require the claimant to demonstrate fault on the part of VA to establish entitlement to benefits under the statute–but again, Congress made no exceptions to the one-year marriage requirement for dependency and indemnity compensation benefits. Pub. L. 104-204, Sept. 26, 1996.

---

[4] Sections 351 and 404 were redesignated sections 1151 and 1304, respectively, in 1991, without changes. Pub. L. 102-83, Aug. 6, 1991.

In light of this historical discussion, the Court concludes that there is no basis, even when the statutes are read together and in light of the statutory scheme, for a finding that Congress intended to make any exception to the length-of-marriage requirement contained in section 1304.

In all, the Court finds that the plain language of section 1304 that creates a one-year marriage requirement to establish status as a surviving spouse is a bright line rule that does not provide for exceptions under any circumstances.

### B. Equitable Considerations

Mrs. Gazaille also argues that the Court has equitable powers to create an exception to the one-year marriage requirement. In support of this argument, she notes that the Court has created other equitable exceptions to statutes where VA has acted wrongly, most notably that the Court permits appellants to equitably toll the 120-day deadline of 38 U.S.C. § 7266(a) to file Notices of Appeal from adverse Board decisions where the appellant relied on incorrect information provided by a VA employee. *See generally Bove v. Shinseki*, 25 Vet.App. 136 (2011). Mrs. Gazaille asserts that the common law principle that a person may not benefit from his wrongdoing should inform the Court's decision to exercise its powers of equity where VA's negligence results in a veteran's death. *See Valasco v. West*, 12 Vet.App. 172, 175-76 (1999) (Steinberg, J., concurring) (stating that equitable estoppel should "prohibit the Secretary from benefitting–if, indeed, it can properly be said that the Secretary 'benefits' from the denial of a benefit to a VA claimant–from his own wrongdoing to the detriment of a claimant"). Our distinguished dissenting colleague would remand this matter on the ground of equitable estoppel.

Equitable estoppel "is grounded in . . . the principle of equity that no person may take advantage of his or her own wrong," 31 C.J.S. *Equitable Estoppel* § 74 (2008). It "operates to place the person entitled to its benefit in the same position he would have been in had the [other party's] representations been true," J. Eaton, *Handbook of Equity Jurisprudence* § 62, 176. Although the Court is sympathetic to Mrs. Gazaille's circumstances, we find that she has simply not demonstrated that equitable estoppel is permissible against the Government, let alone warranted in this case.

The United States Supreme Court has never held that equitable estoppel may be applied against the Government, although it has, perhaps, left the door to that possibility slightly ajar. *See Office of Personnel Management v. Richmond*, 496 U.S. 414, 421, 422 (1990) (stating, that,

7

"[d]espite the clarity of these earlier decisions [finding no equitable estoppel against the Government], dicta in our more recent cases have suggested the possibility that there might be some situation in which estoppel against the Government could be appropriate," but noting that "we have reversed every finding of estoppel [against the Government] that we have reviewed"), *rehearing denied*, 497 U.S. 1046 (1990); *Heckler v. Comm. Health Serv. of Crawford Cty., Inc.*, 467 U.S. 51, 60-61 (1984) ("[W]e are hesitant, when it is unnecessary to decide this case, to say that there are no cases in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government.").  The Supreme Court has held, however, that "even assuming that principles of equitable estoppel ever applied against the Government, 'a private party surely cannot prevail [on that theory] without at least demonstrating that the traditional elements of estoppel are present.'" *Lyng v. Payne*, 476 U.S. 926, 935 (1986) (quoting *Comm. Health Serv.*, 467 U.S. at 61).  Those elements include that

> the party claiming the estoppel must have relied on its adversary's conduct "in such a manner as to change his position for the worse," and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.

*Comm. Health Serv.*, 467 U.S. at 59 (quoting 3 J. Pomeroy, *Equity Jurisprudence* § 805, p. 192 (S. Symons ed. 1941)); *see also* 31 C.J.S. *Estoppel and Waiver* § 247, p. 648 (citing *Patton v. Dole*, 806 F.2d 24 (2d Cir. 1986) ("A claim for equitable estoppel against the federal government typically involves a situation in which an employee of an administrative agency incorrectly represented the law in rendering advice to a citizen who relies on that representation to the citizen's detriment.")).  There is no allegation here, nor is there any indication in the record, that Mr. Gazaille or Mrs. Gazaille relied to their detriment on any misrepresentation of law by an agent of the Secretary.  Accordingly, even if equitable estoppel is permitted against the Government, it is not warranted under the facts of this case.

Two of the four cases our dissenting colleague cites in favor of the proposition that equitable estoppel against the Government is not foreclosed in all instances involve involuntary waivers of statutory requirements by the Government as a result of the Government's failure to comply with a statutory requirement, not equitable estoppel based on misinformation provided by the Government.

8

*See Brush v. Office of Personnel Management*, 982 F.2d 1554, 1558-62 (Fed. Cir. 1992) (holding that, where Government agency failed to inform an annuitant annually of all of the annuitant's rights of election as required by statute, the Agency essentially waived the requirement at issue); *Hamilton v. Brown*, 4Vet.App. 528, 545 (1993) (holding that, where VA failed to send veteran formal application form as statutorily required, VA waived the requirement that a claim be filed on the formal application form).

A waiver, though similar to equitable estoppel, relies on a different legal construct. A waiver "operates to preserve rights already acquired and to prevent forfeiture or avoidance of duties and to create new rights or new causes of action." 31 C.J.S. *Estoppel and Waiver* § 211, p. 611 (citing *Blew v. Connor*, 328 S.W. 2d 626 (Mo. 1959)). Importantly, however, neither the doctrine of equitable estoppel nor "[t]he doctrine of waiver can[] be invoked to nullify a mandatory statutory restriction." *Id.* at p. 612 (citing *Missouri Pac. R. Co. v. American Statesman*, 552 S.W. 2d 99 (Tex. 1977) (where a statute required no less than 22 feet of clearance beneath a structure, but an agent of the railroad assured the newspaper that 16 feet, 4 inches, would be sufficient, railroad did not waive the statutorily required clearance height and was not liable for damage to newspaper's facility caused when its train collided with the too-short overpass)). In this case, section 1304 is a "mandatory statutory restriction" on who may receive dependency and indemnity compensation benefits. Accordingly, there can be no waiver of the one-year length-of-marriage requirement and the Government cannot be equitably estopped from enforcing that restriction.

A third case[5] cited by our dissenting colleague does not involve the Government and clearly states that for equitable estoppel to apply, there must be, among other things, "a representation that later proves to be untrue." *Channel v. Loyacono*, 954 So. 2d 415, 426 (Miss. 2007). Again, in Mrs. Gazaille's case, there has been no misrepresentation made by VA on which she or her husband relied to their detriment. And again, even assuming equitable estoppel is available against the Government, Mrs. Gazaille has not carried her "substantial or very heavy burden" of demonstrating that it is warranted in this case. 31 C.J.S. *Equitable Estoppel* § 247 (citing *Haber v. U.S.*, 17 Cl. Ct. 496

---

[5] The fourth is *Richmond*, 496 U.S. at 422, in which, as noted above, the Supreme Court conceded that the door to equitable estoppel against the Government is not sealed shut but also noted that it had never affirmed a case of equitable estoppel against the Government.

(1989), *aff'd* 904 F.2d 45 (Fed. Cir. 1990); *Jones v. Dep't of Health and Human Serv.*, 843 F.2d 851 (5th Cir. 1988).

### III. CONCLUSION

Upon consideration of the foregoing, the October 10, 2012, Board decision is AFFIRMED.

GREENBERG, Judge, concurring: I concur in the outcome of the majority opinion, but write separately to suggest that an equitable remedy in this case is *unwarranted*, not *unavailable*.

I concur in Judge Hagel's analysis of the statute. The one-year marriage requirement contained in 38 U.S.C. § 1304 is "unambiguous, unequivocal, and unlimited." *Conroy v. Aniskoff*,[6] 507 U.S. 511, 514 (1993). The plain language of section 1304 is not "so absurd or illogical that Congress could not have intended it," *id.* at 517, and its legislative history does not contravene the meaning of that plain language.[7] As the Supreme Court stated when reaching a similar conclusion in *Conroy*,

---

[6] In *Conroy*, the Supreme Court considered a section of the Soldiers' and Sailors' Civil Relief Act of 1940 that stated that "[t]he period of military service shall not be included in computing any period . . . for the bringing of any action or proceeding . . . by or against any person in military service[.]" U.S.C.App. § 525 (now 50 U.S.C.App. § 526). The Supreme Court found there, as we do here with regard to section 1304, that the statute did not contain any qualifications to its unambiguous command, and that if Congress intended additional conditions, it would have written them into the statute. *Conroy*, 507 U.S. at 515 (finding that the inclusion of a prejudice requirement in other sections of the statute meant that congressional omission of that requirement in § 525 was deliberate).

[7] Congress has changed the marriage requirement for surviving spouse benefits several times. Benefits were once based on service in specific wars or armed conflicts. For example, a widow of a World War I veteran would qualify for pension if she had married the veteran prior to December 13, 1944, or if the marriage occurred after that date but lasted 10 years prior to the veteran's death. *See* Letter of H.V. Higley, Administrator of the Veterans Administration, to the House Committee on Veterans' Affairs, May 19, 1957. Beginning in 1957, a widow qualified for pension benefits if she had been married to a veteran for five years. "An Act [t]o liberalize certain criteria for determining eligibility of widows for benefits," Pub. L. No. 85-209, 71 Stat. 485 (1957). That requirement was reduced to one year in 1967. Pub. L. 90-77, 81 Stat. 178 (1967).

The parties here have used this history to offer competing views of legislative intent independent from the statute's plain language. Observing these positions, I note Justice Scalia's concurrence in *Conroy*, in which he stated that the application of legislative history in that case was "not merely a waste of research time and ink; it is a false and disruptive lesson in the law." 507 U.S. at 519. I also note the *Conroy* majority's competing view that "a jurisprudence that confines a court's inquiry to the 'law as it is passed,' and is wholly unconcerned about 'the intentions of legislators,' would enforce an unambiguous statutory text even when it produces manifestly unintended and profoundly unwise consequences." *Id.* at 518, n.12 (internal citations omitted). I conclude that Congress repeatedly liberalized the marriage requirement but declined each opportunity to introduce exceptions to the standard Congress imposed.

10

we cannot say that Congress would have found our straight-forward interpretation and application of its words either absurd or illogical. If the consequences of that interpretation had been–or prove to be–as unjust as respondents contend, we are confident that Congress would have corrected the injustice–or will do so in the future.

*Id.* at 517-18.

Notwithstanding the operation of the statute, the Court should separately consider the application of its inherent power, which is the same as an Article III court when reviewing a federal administrative agency. *See Henderson v. Shinseki*, 131 S.Ct. 1197, 1201 n.2 (2011) (stating that this Court's scope of review is "similar to that of an Article III court reviewing agency action under the Administrative Procedure Act, 5 U.S.C. § 706"); *see, for example,* David A. Case, *Article I Courts, Substantive Rights, and Remedies for Government Misconduct*, 26 N. Ill. L. Rev. 101, 106 (2011) ("Once an Article I court is vested with jurisdiction, it exercises all of the powers associated with the 'Judicial Power of the United States' pursuant to Article III of the Constitution."); James E. Pfander, *Article I Tribunals, Article III Courts, and the Judicial Power of the United States*, 118 Harv. L. Rev. 643, 678 (2004) ("The notion that the category of Article I tribunals includes Article III federal courts as well as other federal adjudicatory bodies may help to explain the many instances of synonymous usage that might otherwise threaten the plausibility of the proposed distinction.").

Thus we must examine our inherent constitutional power to administer equitable remedies. *See* U.S. Const. Art. III, § 2, cl. 1 ("The judicial power extends to all cases, in law and equity"); *American Ins. Co. v. 356 Bales of Cotton*, 26 U.S. 511, 512 (1828) (finding that judicial power extends to all cases in law and equity, arising under the Constitution and the laws of the United States"); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (2011) ("'[W]e do not lightly assume that Congress has intended to depart from established principles' such as the scope of a court's inherent power." (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982))); *Califano v. Yamasaki,* 442 U.S. 682, 705 (1979) ("Absent the clearest command to the contrary from Congress, federal courts retain their equitable power . . .").

The ability of a court to right a demonstrated wrong is intrinsic to the basic concept of equitable powers:

It is universally recognized that equity will not suffer a wrong without a remedy. This maxim is derived, Professor Pomeroy informs us, from the more comprehensive

11

> legal maxim that wherever a legal right has been infringed a remedy will be given. The equitable maxim is the source of the entire equitable jurisdiction, whether it be exclusive, concurrent or auxiliary. *See* 2 Pomeroy Equity Jurisprudence (5th ed., Symons), § 423.

*Cona v. Gower*, 215 A.2d 575, 579 (N.J. Super Ct. Ch. Div 1965) (Matthews, J.S.C.). Those powers include the fashioning of remedies based on equitable maxims, such as "[e]quity aids the vigilant," *Ferguson v. Shinseki*, No. 13-1149, 2014 WL 463690 (Vet. App. Feb. 6 2014) (Greenberg, J., concurring) (citing John Norton Pomeroy, *Pomeroy's Equity Jurisprudence and Equitable Remedies* § 418 (4th ed. 1918), or "[e]quity is equality," *Monmouth Lumber Co. v. Indemnity Ins. Co. of North America*, 21 N.J. 439, 451 (1956) (Vanderbilt, C.J.) (stating in a matter among creditors that, "[w]hile it is true that in ordinary circumstances equity follows the law and will not divest rights that have been legally acquired, that doctrine must yield if extraordinary circumstances or 'countervailing equities' call for relief . . . . [T]he doctrine of equality of treatment is applied where justice requires it[.]") (internal citations omitted).

"Equitable remedies are distinguished for their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use," *Sears, Roebuck & Co. v. Camp*, 124 N.J. Eq. 403, 411 (E. & A. 1938) (Heher, J.), and one such remedy for potential application here, as noted by the dissent, is equitable estoppel, *see Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414 (1990), *reh'g denied*, 497 U.S. 1046 (1990) (noting that the holding does not preclude an estoppel claim against the Government in every situation). A claimant in the appellant's position here could obtain an equitable remedy, such as estoppel, injunction, or some other remedy, with a sufficient presentation to the Court that such a remedy was warranted on the existing facts. *See Sneed v. Shinseki*, 737 F.3d 719, 726, 728 (Fed. Cir. 2013) (finding that "courts acting in equity have emphasized the 'need for flexibility' and 'for avoiding mechanical rules,' and have proceeded on a 'case by case basis'") (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2011)).

I conclude that this appellant has not made that presentation. *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) ("An appellant bears the burden of persuasion on appeals to this Court."), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table). No equitable remedy is warranted here without the appellant *at least* providing this Court some evidence that (1) the veteran's death was the result of VA's negligence; and (2) the veteran would have lived long enough

12

for the appellant to satisfy the one-year requirement of 38 U.S.C. § 1304 *but for VA's negligence.* Significantly, the appellant did not present this Court with a proffer of *proof*, beyond bare assertions, establishing those propositions. The appellant did not show, or specifically argue, that VA's duty to assist, 38 U.S.C. § 5103A, is so unlimited as to compel the Secretary to develop evidence for the sole purpose of obtaining an equitable remedy from this Court for the appellant.

In the absence of the necessary showing that an equitable remedy is warranted, the statute controls.[8]

KASOLD, *Chief Judge*, dissenting: Stating what is obvious to those reading today's fractured opinions regarding the application of equity, Judge Hagel presumes that Mrs. Gazaille could demonstrate on remand that VA's medical negligence hastened her husband's death, but concludes that the Court is without authority to grant equitable relief with regard to dependency and indemnity compensation (DIC). Judge Greenberg leaves open the door that equitable relief might be warranted but, without addressing the duty to assist, faults Mrs. Gazaille for not presenting such evidence. Combined, they affirm the Board decision.

I agree that equitable relief might be warranted and, taking cognizance of the duty to assist, would remand this matter for development of Mrs. Gazaille's assertions that VA's medical negligence hastened her husband's death. As a practical matter, if Mrs. Gazaille has or can gather evidence to support her assertion of medical malpractice, she might very well find the concurring and dissenting opinions warrant her seeking to reopen her claim. *See* 38 U.S.C. § 5108 (Secretary shall reopen a claim when "new and material evidence is presented or secured"). Because the Board is without authority to grant equitable relief, however, it is likely that the issue of equitable relief will return to the Court.

Veteran Dennis Gazaille suffered from service-connected lung cancer that ultimately caused his death. Mrs. Gazaille filed a claim for DIC pursuant to 38 U.S.C. §§ 1151 and 1310, but her claim was rejected pursuant to 38 U.S.C. § 1304 because the death of her husband terminated their marriage before they had been married for one year. Succinctly stated, her assertions of medical

---

[8] I note that if the appellant obtains, and proffers, appropriate evidence, she may present it to the Court in a petition for extraordinary relief premised upon equity.

malpractice were never developed. Before both the Board and the Court, Mrs. Gazaille has maintained that her husband's death was hastened by VA medical malpractice that prematurely terminated their marriage before their one-year anniversary. Under such circumstances, she argues that the provision in section 1304 that DIC cannot be paid unless the marriage lasted for at least one year should not be applied. If not applied, VA would have to develop her assertion that her husband's death was premature due to VA medical malpractice. *See DeLaRosa v. Peake*, 515 F.3d 1319, 1321 (Fed. Cir. 2008) (applying 38 U.S.C. § 5103A(a) (duty to assist) to DIC claims).

Accordingly, for purposes of this appeal, Mrs. Gazaille's assertions of malpractice must be presumed to be true in order to resolve whether the law authorizes benefits in this situation, which would also entitle Mrs. Gazaille to VA assistance in developing her claim. *Cf. Arrow v. Fed. Reserve Bank of St. Louis*, 358 F.3d 392, 393 (6th Cir. 2004) (in considering a motion to dismiss for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6), "[t]he reviewing court must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true and determine whether the plaintiff can prove no set of facts in support of his claim that would entitle him to relief"); *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (complaint should not be dismissed under Rule 12(b)(6) unless, "as a matter of law, the plaintiff is [not] entitled to legal relief even if everything alleged in the complaint is true").

There is no dispute that section 1151 authorizes DIC benefits in the same manner as a service-connected death if a veteran's death is due to VA medical malpractice. There also is no dispute that section 1310 authorizes DIC benefits for service-connected deaths. And, as relevant to this case, there is no dispute that section 1304 precludes the payment of DIC benefits to a surviving spouse unless the marriage lasted at least one year. The issue is whether the Secretary should be equitably estopped from asserting that a marriage was less than one year, when the marriage was terminated due to VA medical malpractice.

It is well settled that equitable estoppel will not be applied against the Government when Congress has not provided at all for such a payment. *See Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414 (1990) [hereinafter *OPM*], *reh'g denied*, 497 U.S. 1046 (1990). Here, however, although Congress established certain criteria that, when met, preclude payment of DIC benefits, this is not a situation where Congress has not provided at all for the sought-after payment. Otherwise

14

stated, Congress has provided DIC benefits for a veteran's spouse when the veteran's death is due to VA medical malpractice or a service-connected injury or disease. *See* 38 U.S.C. §§ 1151, 1310-1318. Thus, while equitably estopping the Secretary from asserting that the Gazailles' marriage was less than one year might ultimately permit payment of DIC benefits, the action of equitably estopping the Secretary does not create the sought-after payment; that authorization is in sections 1151 and 1310.

Moreover, although the Government rarely is equitably estopped, even when Congress has authorized a general benefit, such action is not foreclosed. *See OPM*, 496 U.S. at 423 (noting that the holding does not preclude an estoppel claim against the Government in every situation); *Brush v. Office of Personnel Mgmt.*, 982 F.2d 1554, 1562 (Fed. Cir. 1992) (deeming waived (involuntarily) a statutory requirement to file notice and election for survivor annuity benefits before such benefits may be paid due to agency failure to notify to submit notice and election); *Hamilton v. Brown*, 4 Vet.App. 528, 544-45 (1993) (en banc) (holding statutory requirement (38 U.S.C. §5101(a)(1)) for a formal application to be filed in order for benefits to be paid deemed waived (involuntarily) if Secretary did not adhere to his regulation (38 C.F.R. § 3.155(a) (1993)) and provide formal application form after informal claim was filed), *aff'd* 39 F.3d 1574 (Fed. Cir. 1994); *see also Channel v. Loyacono*, 954 So.2d 415, 425 (Miss. 2007) ("Waiver is voluntary surrender or relinquishment of some known right, benefit or advantage; estoppel is the inhibition to assert it.") (internal quotation marks omitted).[9]

---

[9] Although Judge Hagel criticizes my citing to *Brush* and *Hamilton*, in support of applying equitable estoppel in this case because they did not involve the application of equitable estoppel, I believe he misses the fact that finding an "involuntary waiver" is the equivalent of applying equitable estoppel. Thus, I cite *Channel* for the proposition that, although waiver and equitable estoppel are different in that one relinquishes a right while the other inhibits the assertion of the right, the key point is that a waiver is voluntary. Thus, finding an involuntary waiver of a requirement to comply with statutory provisions is no different in substance than equitably estopping a party from demanding compliance with those statutory provisions. Thus, I could state that the application of the statutory ban on DIC for a surviving spouse of a marriage less than one year is involuntarily waived if VA medical malpractice causes a premature death before the couple is married for one year, but equitable estoppel is the more proper term.

Further, although Judge Hagel notes that "neither the doctrine of equitable estoppel nor '[t]he doctrine of waiver can[] be invoked to nullify a mandatory statutory restriction,'" it is clear that courts have not imposed statutory mandates when the government is at fault. *See*, *e.g.*, *Brush* and *Hamilton*, each using a doctrine of waiver–indeed, involuntary waiver–to nullify mandatory statutory restrictions that otherwise preclude payment when specified requirements are not met. A duck by any other name is still a duck.

Finally, I note that while Judge Hagel finds no misrepresentation by VA that has been relied upon by Mrs.

The legal issue before the Court presents one of those rare cases. Otherwise stated, the premature death of a veteran caused by VA medical malpractice warrants equitably estopping the Secretary from asserting that the marriage lasted less than one year for purposes of determining DIC eligibility. *Cf. Brush*, 982 F.2d at 1562; *Hamilton*, 4 Vet.App. at 544-45. Indeed, application of the one-year requirement under such circumstances (1) was not contemplated by Congress, (2) would not further the Congressional purpose behind the one-year requirement (which was to preclude benefits for sham marriages),[10] (3) creates conflict with the purposes behind sections 1151 and 1310, and (4) otherwise would be unconscionable. *Cf. United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242-43 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'") (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)).

In sum, although equitable estoppel against the Government is rare, if ever it were to apply the premature death of a veteran caused by VA medical malpractice that would otherwise prevent the surviving spouse of a valid marriage from receiving DIC is just such a case. Because equitable estoppel is warranted in such circumstances, I would remand this matter for the Board to ensure development of Mrs. Gazaille's assertion that her husband's death was premature due to VA medical malpractice.[11] *See* 38 U.S.C. § 7252(a) (Court has the power to "remand the matter, as appropriate").

---

Gazaille or her husband, the assertions of medical malpractice, if ultimately founded, belie that. Specifically, at a minimum, VA implicitly represented that it would provide appropriate medical care. If the evidence is developed and medical malpractice is demonstrated, then the Gazailles' reliance certainly was detrimental to them, both in the premature death of Mr. Gazaille and the denial of DIC.

[10] *See* H.R. REP. NO. 85-10575, at 10575-77 (1957); *Increase of Pensions for Veterans, and Pensions and Increase of Pensions for Widows Spanish-American War: Hearing on H.R. 2350 and H.R. 2784 Before the H. Comm. on Pensions*, 78th Cong. 9, 13, 16, 20 (1943); H.R. REP. APP. NO. A5395 (1951). There has been no assertion that the Gazaille's marriage was a sham, but equitable estoppel would not be warranted if such were demonstrated.

[11] I reiterate that there has been no demonstration or finding that Mr. Gazaille's death was hastened by VA medical malpractice or that VA committed medical malpractice at all. Rather, such malpractice is presumed to reach the otherwise elusive issue of whether the one-year marriage requirement of section 1304 applies to prevent the award of DIC to a surviving spouse when the marriage was cut short of one year due to VA medical malpractice. Because I would find that section 1304 does not operate in such circumstances, I would remand for development of the malpractice issue.